**UNITED STATES of America, Plaintiff,**

v.

**OUTBOARD MARINE CORPORATION, et al., Defendants.**

No. 78 C 1004.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1982.

James T. Hynes, James P. White, Asst. U.S. Attys., Chicago, Ill., Elizabeth Stein, Atty., Dept. of Justice, Washington, D.C., M. Kaye Jacobs, Sebastian Patti, Enforcement Attys., U.S. E.P.A., Chicago, Ill., John Wheeler, Atty., U.S. E.P.A., Washington, D.C., for U.S.

John Van Vranken, Asst. Atty. Gen., Chicago, Ill., for State of Ill.

Richard Phelan, Michael A. Pope, Roseann Oliver, Phelan, Pope & John, Richard J. Kissel, Jeffrey C. Fort, Carol L. Dorge, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for Outboard Marine Corp.

Fred H. Bartlit, Jr., James H. Schink, Bruce A. Featherstone, Robert E. Shapiro, Kirkland & Ellis, Chicago, Ill., for Monsanto Co.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

This water pollution suit is before the court on the motion of defendant Monsanto Corporation to dismiss Counts VI and VII of the Second Amended Complaint. The United States sued Outboard Marine Corporation ("OMC") complaining of the alleged discharge of polychlorinated biphenyls ("PCBs") into navigable waters in the area of OMC's Waukegan, Illinois facility. The United States alleges that Monsanto sold PCB-bearing hydraulic fluids to OMC, and has named Monsanto as defendant in three of the seven counts of its Second Amended Complaint. In Count V, Monsanto is sued under the federal common law of nuisance; this count was dismissed by order dated May 24, 1982. In Count VI, Monsanto is sued on a products liability theory; and in Count VII, Monsanto is sued under the Refuse Act, 33 U.S.C. § 407. Injunctive relief is sought on all counts. For the reasons stated below, Monsanto's motion to dismiss Counts VI and VII is granted.

The motion to dismiss Count VI, the products liability count, presents what essentially is a choice of laws problem. The United States has alleged that Monsanto failed adequately to warn of the dangers of its PCB-bearing hydraulic fluids, that it sold these fluids to OMC, and that as a result of OMC's use of the fluids the United States is injured in its sovereign interest in the nation's navigable waterways. These allegations, the United States asserts, state a claim under the common law of products liability. After some initial confusion, it now is established that this claim is brought under the Illinois common law of products liability, not under a federal common law of products liability, as Monsanto originally understood it to be. While the court entertains some doubt as to whether Count VI does state a claim under Illinois law,[1] the

---

1. The Government has advanced no case which convinces the court that its sovereign interest in the waterways is protected by Illinois products liability law. The court has found no case in which a state or a city stated a claim based on its governmental interests, as opposed to its proprietary interest in motor vehicles and the like. The City of Chicago once brought a products liability suit based on air pollution, but the federal courts dismissed the action on grounds probably not relevant here. *City of Chicago v. General Motors Corporation*, 467 F.2d 1262

court holds that as a matter of federal law the court cannot resolve the Government's claim against Monsanto on a state law products liability theory.

Ordinarily, federal courts do not have difficulty in determining whether a federal or a state rule of decision is appropriate. If an applicable federal statute exists, it is applied; if not, state law is applied. 28 U.S.C. § 1652; *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Sometimes a court must decide more difficult questions regarding the degree to which state law can supplement a federal statute as the rule of decision. In exceptional cases a federal rule of decision is chosen, even though no applicable federal statute exists. Such cases are marked by substantial federal interests which may not be protected adequately by a state law rule of decision. *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943); *Hinderlider v. La Plata Co.,* 304 U.S. 92, 110, 58 S.Ct. 803, 810, 82 L.Ed. 1202 (1938). In such cases the need for a federal rule of decision and the absence of any governing federal statute require the court to fashion federal common law.[2]

In *Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) ("Milwaukee I"), the Supreme Court held that even in the absence of a directly applicable federal statute, a federal rule of decision was required in a water pollution suit brought by one state against citizens of another state. It was not only the character of the parties that required the choice of federal law, the Court emphasized; pollution of the nation's navigable waterways requires a uniform federal rule of decision. *Id.* at 105 & n. 6, 92 S.Ct. at 1393–94 & n. 6. The Court explicitly noted that its choice of a federal rule of decision involved rejection of a state rule of decision. *Id.* at 105 & n. 7, 92 S.Ct. at 1394 & n. 7. *See also City of Evansville v. Kentucky Liquid Recycling Corp.,* 604 F.2d 1008, 1021 (7th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). While this holding may not require a federal rule of decision for every case which in some way involves water pollution, the court considers *Milwaukee I* to govern the present case, in which the federal interest is at its strongest—the United States is suing to protect its sovereign interest in the nation's waterways.

In *Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) ("Milwaukee II"), the Supreme Court held that the 1972 amendments to the Clean Water Act had occupied the relevant field. Thenceforth federal statute alone was to supply the rule of decision in such cases; federal courts could not supplement Congressional action by supplying a cause of action where Congress had not. *Milwaukee II* did not overrule the holding of *Milwaukee I* that a federal rule of decision is required in this field.

The potentially difficult questions in this area are not very difficult in this case. These questions ask the scope of the Supreme Court's holdings in *Milwaukee I* and *Milwaukee II.* For how broad an area did *Milwaukee I* hold that a federal rule of decision was appropriate? And how broad a field did *Milwaukee II* hold that Congress had occupied with the 1972 amendments? A water pollution case not involving substantial federal interests might fall outside the scope of these holdings. The present case, however, falls squarely within the domain of the *Milwaukee* cases. A suit by the United States to protect navigable waterways from pollution requires a federal rule

---

(7th Cir.1972), *aff'g* 332 F.Supp. 285 (N.D.Ill. 1971). The court's dismissal of Count VI does not rest on these doubts as to the state law sufficiency of the allegations.

**2.** *In re Agent Orange Products Liability Litigation,* 635 F.2d 987 (2d Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), relied on by the United States, is con-

sistent with this analysis. In that case, former servicemen sued manufacturers of U.S. war chemicals used in Viet Nam. No federal statute governed, and the Court of Appeals held that any federal interest present was insufficient to require that a federal rule of decision be fashioned by the court.

of decision under *Milwaukee I* and a statutory rule of decision under *Milwaukee II.*

The court cannot accept the Government's suggestion that Count VI should be treated as a products liability count instead of as a water pollution count, and that state products liability law must govern because there is no federal products liability law. The crucial factors in *Milwaukee I* and *Milwaukee II* were the federal interests affected by water pollution and the nature of the environmental problem Congress addressed in 1972. The scope of the Supreme Court's holdings is determined by these factors, not by the legal theories under which the Government brings its water pollution suits.[3]

Monsanto has moved also to dismiss Count VII, which is based on section 13 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C. § 407. The Refuse Act provides as follows:

> It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water . . .

33 U.S.C. § 407. The Government alleges that Monsanto sold PCB-bearing materials to OMC, knowing of OMC's discharges of these materials into navigable waters; Monsanto thus is said to have caused or suffered the discharges in violation of the statute.

In its brief on this motion the Government refers to the aiding and abetting language of Section 16 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 411, and also to the provision on aiders and abettors in 18 U.S.C. § 2. These references do not improve the Government's position. First, as pointed out by Monsanto, Count VII does not address itself to aiding and abetting; it alleges that Monsanto caused or suffered the discharges to occur, making no mention of Section 16. More importantly, Section 16 does not govern this Refuse Act count. Section 16 prescribes fines and imprisonment for violations of Section 13. The Government is not seeking the fines or imprisonment set out in Section 16. Instead, the Government is seeking a Refuse Act injunction. While the origins of the Refuse Act injunction are obscure, they probably lie in Section 13 itself. *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); *United States v. Republic Steel Corp.,* 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). At any rate, the court has found no case suggesting that Refuse Act injunctions issue under Section 16.

The merit of the Government's argument lies in the plain language of the Refuse Act itself, which clearly forbids the causing or suffering of discharges of refuse into navigable waters. In reading the Refuse Act, the court must take into account two factors. First, the Government has been unable to produce any case in the 80-year history of the Refuse Act in which one other than the actual discharger was held liable for causing or suffering the discharge. Second, the court must be mindful of the Supreme Court's decision in *Milwaukee II.* That case dealt with the preemptive effect of federal water pollution legislation on the federal common law of nuisance. Count VII does not present any questions of federal common law, and so *Milwaukee II* is not on point. Monsanto has suggested, though, that *Milwaukee II*

---

**3.** The role of state law in controlling water pollution is discussed in dictum in *Illinois v. United States Army Corps of Engineers,* No. 79 C 5406, slip op. at 25n. (N.D.Ill. July 20, 1981) (Getzendanner, J.). Section 510 of the Clean Water Act, 33 U.S.C. § 1370, allows states to adopt and enforce their own standards; arguably, this includes state common law, although the court does not decide this question. Neither this nor any other provision of the Clean Water Act provides for federal water pollution suits under state law, statutory or common.

counsels against new applications of old statutes in the face of the more comprehensive 1972 amendments. While *Milwaukee II* cannot delete previously unused language from preexisting statutes, the point is well taken that courts should be cautious when asked to develop old statutes in new ways where water pollution is concerned.

The court concludes that Monsanto's alleged actions do not constitute a violation of the Refuse Act. In construing the "cause" and "suffer" language the court must avoid, on the one hand, a reading so broad as to impose widespread and unintended liability; on the other hand, the court must avoid a reading so narrow as to deny meaning or effect to words which Congress intentionally included. The Government quotes Webster to show that "to suffer" may be no more than "not to forbid or hinder," or "to tolerate." Here the Government runs the risk of proving too much, for everyone failed to hinder the alleged discharges. To avoid this danger, the Government narrows its reading while still including Monsanto: Monsanto is liable because it *knew* of the discharges and *could* have prevented them by refusing to supply OMC with fluids. Indeed, Black's fifth edition includes the elements of knowledge and ability to prevent in its definition of "to suffer," citing *Wilson v. Nelson,* 183 U.S. 191, 22 S.Ct. 74, 46 L.Ed. 147 (1901).

The Government's proposed reading may be manageable, but the court rejects it. In practical effect, holding suppliers liable under the Refuse Act would work a significant change in water pollution law, even though the relevant language has been on the books since 1899. Especially in light of *Milwaukee II,* the court believes it would be inappropriate to extend the reach of the Refuse Act in this way. It should be noted that reading the Refuse Act to exclude suppliers from liability does not render the "cause, suffer or procure" language meaningless. Congress might have envisioned employees or independent contractors depositing refuse into the waters; without this language the employer or property owner might have escaped liability.[4]

The court therefore grants the motion of Monsanto Corporation to dismiss Counts VI and VII of the Second Amended Complaint.

It is so ordered.

---

**4.** As this opinion was being prepared, the United States directed the court's attention to *United States v. M/V Big Sam,* 681 F.2d 432 (5th Cir.1982). In *Big Sam* the United States sought to recover cleanup costs from a vessel which caused another vessel to discharge oil into navigable waters. Suit was brought under Section 311 of the Clean Water Act, 33 U.S.C. § 1321; under the Refuse Act; and under judge-made maritime tort law. The court denied the Refuse Act claim, but allowed the maritime tort law claim, applying Section 311(h)(2) of the Clean Water Act. That provision declares that the liabilities created by Section 311 shall not affect any rights the United States may have against third parties responsible for discharges of oil or hazardous substances.

This court's dismissal of the Refuse Act count against Monsanto is unrelated to the Clean Water Act, so *Big Sam* is immaterial so far as Count VII is concerned. The Clean Water Act is related to this court's disposition of Count VI, the products liability count against Monsanto, but *Big Sam* can be distinguished from the present case. Monsanto, replying by letter to the Government's production of *Big Sam,* notes that the Fifth Circuit comments on the special vitality of judge-made maritime law relative to other types of federal common law. In any event, under the reasoning by which the court dismisses Count VI, it is not the liabilities created by Section 311 which render state common law inapplicable to this suit, it is the need for a federal rule of decision recognized in *Milwaukee I.*