**UNITED STATES of America, Plaintiff,**

**and**

**The People of the State of Illinois, Intervenors,**

**v.**

**OUTBOARD MARINE CORPORATION, Defendant, Third-Party Plaintiff, and Cross-Claim Defendant,**

**and**

**Monsanto Company, Defendant, Third-Party Defendant, and Cross-Claim Plaintiff.**

**No. 78 C 1004.**

United States District Court, N.D. Illinois, E.D.

Aug. 30, 1984.

---

gan, Illinois facility of the Outboard Marine Corporation ("OMC"). The PCBs allegedly were discharged from OMC's facility, and they allegedly came from PCB-bearing industrial fluids sold to OMC by Monsanto Company. The United States has sought an injunction requiring OMC and Monsanto to clean up the Waukegan Harbor. After several years of litigation, however, the United States has decided to clean the Harbor up by itself (along with intervenor the State of Illinois), intending to file another suit at a later date to recover the costs of the cleanup. The United States, joined by Illinois, now seeks dismissal of this action. OMC and Monsanto oppose dismissal, OMC asking alternatively that the case be dismissed with prejudice. As explained more fully below, the court will dismiss this action, and dismissal shall be with prejudice generally, but without prejudice to a future suit to recover the costs of cleaning up the Harbor. The court's ruling does not constitute an endorsement of the proposed cleanup plan, but rather is based on an acknowledgment that the United States can proceed with cleanup operations without obtaining prior court approval.

James T. Hynes, Elizabeth Stein, Asst. U.S. Attys., Chicago, Ill., for U.S.

Joseph A. Drazek, Asst. Atty. Gen., Chicago, Ill., for State of Ill.

Richard Phelan, Roseann Oliver, Phelan Pope & John, Richard Kissel, Jeffrey Fort, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for Outboard Marine Corp.

Fred H. Bartlit, Jr., James H. Schink, Robert E. Shapiro, Kirkland & Ellis, Chicago, Ill., for Monsanto Co.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

▇ This water pollution suit involves an accumulation of polychlorinated biphenyls ("PCBs") in the Waukegan Harbor and other navigable waters adjacent to the Wauke-

### I. BACKGROUND

The United States filed suit against OMC on March 17, 1978. OMC brought Monsanto in as a third-party defendant on November 16, 1978, and on July 22, 1980 the United States filed its Amended Complaint, which asserted claims directly against Monsanto. The United States' claims against Monsanto have been dismissed, but OMC's third-party claims remain alive, as do crossclaims which Monsanto has asserted against OMC. The State of Illinois is party to the case as intervenor, but for simplicity's sake the court will defer discussion of Illinois' role until the end of this opinion.

The United States' current complaint is its Second Amended Complaint, which it filed on February 2, 1982, for the purpose of adding a count against OMC under § 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA" or "Super-

fund"), 42 U.S.C. § 9606(a). The Second Amended Complaint contains seven counts, four of which have been dismissed for failure to state a claim upon which relief can be granted. Counts III (asserted against OMC) and V (asserted against Monsanto), brought under the federal common law of nuisance, were dismissed by order dated May 24, 1982. Counts VI and VII, asserting claims against Monsanto under the Illinois common law of products liability and under the Refuse Act, § 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407, were dismissed by order dated September 30, 1982. *United States v. Outboard Marine Corporation,* 549 F.Supp. 1032 (N.D. Ill.1982). The three remaining counts, Counts I, II, and IV, assert claims against OMC under the Refuse Act, under § 309 of the Clean Water Act, 33 U.S.C. § 1319, and under § 106(a) of CERCLA. The court denied OMC's motions to dismiss these counts in two orders dated October 8, 1982. *United States v. Outboard Marine Corporation,* 549 F.Supp. 1036, 556 F.Supp. 54 (N.D.Ill.1982). With the exception of civil penalties sought only under Count II, all seven counts seek the same relief—a mandatory cleanup injunction primarily requiring the removal of accumulated PCBs from the Waukegan Harbor.

OMC's motions to dismiss Counts I, II, and IV argued mainly that mandatory injunctions generally are not available to require private parties to clean up accumulated hazardous substances. The Clean Water Act and CERCLA both contain provisions under which the United States may conduct its own cleanup of hazardous substances and then sue to recover its cleanup costs. 33 U.S.C. § 1321; 42 U.S.C. §§ 9604, 9607. OMC argued that these and other provisions preclude issuance of mandatory cleanup injunctions under 33 U.S.C. § 1319(b) and 42 U.S.C. § 9606(a). OMC also argued that the 1972 amendments to the Clean Water Act preempted the issuance of injunctions to enforce the Refuse Act, 33 U.S.C. § 407, which does not explicitly authorize the granting of injunctive relief. The court rejected these arguments, holding that the requested injunc-

tive relief is available under all three statutes. 549 F.Supp. 1035; 556 F.Supp. 54. On November 12, 1982 OMC filed a motion to reconsider the court's orders, again arguing that injunctive relief is not available. The court informed the parties that it would give OMC's motion serious consideration, and, in a departure from its usual practice respecting pre-trial motions, the court set the matter for oral argument. The court's order dated February 18, 1983 formulated specific questions to be addressed during argument, all relating to the availability of (or to the standards for granting) mandatory injunctive relief under the statutes in question.

At some point along the way, the United States decided to cease its efforts to obtain a mandatory cleanup injunction, and instead to conduct its own cleanup, to be followed by a suit to recover its cleanup costs. On February 25, 1983 the United States filed what purported to be a notice under Fed.R.Civ.P. 41(a)(1)(i), dismissing Count IV, the CERCLA injunction count, without prejudice. OMC objected, and at the court's suggestion the United States filed an alternative motion to dismiss Count IV under Fed.R.Civ.P. 41(a)(2), without waiving its claim to dismiss Count IV as of right. On March 21, 1983 the United States, joined by Illinois, moved for a stay of proceedings during the pendency of a government cleanup under § 104 of CERCLA, 42 U.S.C. § 9604. OMC and Monsanto opposed the United States' proposal, and Monsanto filed a motion to bifurcate under Fed.R.Civ.P. 42(b), requesting an early trial of certain issues before any government cleanup. Although these motions were briefed on the understanding that the court would decide them promptly, on July 26, 1983, at the parties' suggestion, the court stayed consideration of the motions until after the EPA issued a final version of its proposed government cleanup.

The EPA proceeded with its administrative determination, including public meetings and comment periods. On May 15, 1984 the EPA issued the final version of its report, in the form of a Record of Decision

("ROD") supporting its selection from among different alternative cleanup remedies. Within a few days the United States filed a motion, joined in by the State of Illinois, for voluntary dismissal of its suit under Fed.R.Civ.P. 41(a)(2). The United States intends to implement the selected remedy, probably to be followed by a cost-recovery suit. OMC and Monsanto oppose the United States' motion. The United States still maintains that it dismissed Count IV as of right, but the court will begin by assuming that the United States' purported notice of dismissal was of no effect; the court will address the notice of dismissal later in this opinion.

## II. VOLUNTARY DISMISSAL

■■■■ Fed.R.Civ.P. 41(a)(2), under which the United States moves, reads in pertinent part:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

The purpose of this rule is to prevent voluntary dismissals which unfairly affect an opposing party. In general, dismissal should be allowed, unless the defendant will suffer some plain legal prejudice beyond the mere prospect of a second law suit. *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir.1971). Disposition of a motion under Fed.R.Civ.P. 41(a)(2) is a matter for the sound discretion of the trial court. The court's discretion runs not only to the setting of proper terms and conditions, but also to the question of whether dismissal will be allowed at all. *Grivas v. Parmelee Transportation Co.*, 207 F.2d 334, 336 (7th Cir.1953), *cert. denied*, 347 U.S. 913, 74 S.Ct. 477, 98 L.Ed. 1069 (1954), *overruling Bolten v. General Motors Corp.*, 180 F.2d 379 (7th Cir.1950). If the court allows dismissal but sets conditions not requested by the plaintiff, then the plaintiff may with-

draw its motion. *GAF Corporation v. Transamerica Insurance Co.*, 665 F.2d 364, 367–68 (D.C.Cir.1981). Standards for ruling upon motions under Fed.R.Civ.P. 41(a)(2) are discussed in *Tyco Laboratories, Inc. v. Koppers Co.*, 627 F.2d 54 (7th Cir.1980), and *Pace v. Southern Express Co.*, 409 F.2d 331 (7th Cir.1969).

In this case OMC and Monsanto both argue that the court should not dismiss this action, and instead should set the case for trial on these questions:

> Whether the PCBs in Waukegan Harbor and on the property of Outboard Marine Corporation pose a risk of substantial and imminent harm to the public health, drinking water, or aquatic life in the Waukegan Harbor area?

What remedy, if any, is appropriate under the circumstances? (Monsanto motion for bifurcation filed 3/25/83.) OMC alternatively asks that the case be dismissed with prejudice.

### A. Dismissal with prejudice

Counts III, V, VI, and VII have been dismissed for failure to state a claim upon which relief can be granted, and it appears to be understood by the parties that dismissal of these counts shall be with prejudice. The United States asks that Counts I, II, and IV be dismissed without prejudice, but it is clear to the court that dismissal without prejudice potentially could affect the defendants unfairly. The court was about to take oral argument on OMC's motion to reconsider when the United States changed its approach to this case. The court would have ruled on the motion to reconsider well over a year ago. While the court does not know how it would have ruled, there was a serious possibility that the court would have granted OMC's motion. Having forestalled a ruling on OMC's motion, the United States should not be allowed the option of reinstating the claims it asserts in Counts I, II, and IV. The United States suggests that dismissal with prejudice is unnecessary, pointing out that the statute of limitations has run on its claim for penalties under the Clean Wa-

ter Act, and stating that its claims for injunctive relief are mooted by the proposed government cleanup. The court believes, however, that the defendants should be protected against even a slim possibility that the United States might change its plans again. This litigation undoubtedly has been very costly for the parties to litigate. The United States should not be permitted, at some future time, to move backward and return to its original approach to the problem.

 The court therefore will allow dismissal of Counts I, II, and IV only with prejudice. Such dismissal "is subject to the usual rules of res judicata." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2367 at 185–86 (1971). The court assumes that dismissal with prejudice will bar reinstatement of Counts I, II, and IV but will not bar a future cost-recovery suit, and the court does not understand OMC or Monsanto to argue otherwise. If for no other reason, a future cost-recovery suit would appear not to be barred because a claim to recover costs incurred in the cleanup could not have been joined with this action. Res judicata generally does not bar claims that could not have been brought in the first action. *See generally Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150 (7th Cir.1984), *cert. granted,* — U.S. —, 104 S.Ct. 3553, 82 L.Ed.2d 854 (1984). Lest there be any misunderstanding, the court will state clearly that dismissal is with prejudice generally, but without prejudice to a future cost-recovery suit. Also for the sake of clarity, the court emphasizes that it is setting dismissal with prejudice as a condition of voluntary dismissal under Fed.R.Civ.P. 41(a)(2), and the United States may accept dismissal under this condition or it may withdraw its motion for voluntary dismissal. The court is not ordering an involuntary dismissal under Fed.R.Civ.P. 41(b), as suggested by OMC. (OMC memo filed 6/22/84, p. 30.)

**B. If dismissal were not allowed**

OMC and Monsanto ask the court not to allow dismissal. Only as an alternative request does OMC ask that dismissal be with prejudice. The court does not believe, however, that refusing to allow dismissal would be an appropriate way of protecting OMC and Monsanto from prejudice.

In the *Pace* case, cited above, the Court of Appeals upheld a district court's refusal to allow dismissal on a motion under Fed.R. Civ.P. 41(a)(2). The defendant's simple and meritorious motion for summary judgment was ripe for decision, and in moving for voluntary dismissal without prejudice the plaintiff apparently hoped to avoid summary judgment and proceed with parallel litigation in state court. The Court held that the defendant was entitled to have the litigation "disposed of in a manner that will protect the defendant against future litigation." 409 F.2d at 334. Of course, dismissal with prejudice also would have protected the defendant against future litigation. A review of *Pace* suggests that denying the motion for voluntary dismissal, rather than allowing dismissal with prejudice, was appropriate for at least two reasons. First, the motion for summary judgment apparently could be disposed of easily. Second, granting dismissal with prejudice probably would have been a useless exercise, since the plaintiff could have been expected to reject the condition of dismissal with prejudice, if the court properly divined her intentions. *See id.* at 334. In this case neither of these factors is present. First, this case could not be disposed of easily if the court did not allow dismissal. Second, it seems likely that the United States will accept the condition of dismissal with prejudice, since its intention is not to refile Counts I, II, and IV, but rather to clean up the Harbor and file a cost-recovery suit, a course of action which is not barred by dismissal with prejudice. Other possible reasons for not allowing dismissal require more discussion.

**1. The Record of Decision**

OMC's and Monsanto's opposition to dismissal plainly is an attempt to obtain judicial review of the ROD before the cleanup

is undertaken. Each defendant has devoted an overwhelming portion of its memorandum on this motion to attacking the ROD. Among other points, OMC and Monsanto argue that the ROD ignores current scientific literature minimizing the harmfulness of PCBs, and that the United States' responses to certain requests for admission under Fed.R.Civ.P. 36 demonstrate the absence of any real health hazard. OMC and Monsanto also criticize the proposed remedy. Among other criticisms, OMC and Monsanto argue that if PCBs do indeed pose a serious threat, then the proposed cleanup will stir up PCBs presently buried beneath layers of sediment.

The statutory scheme does not provide for any judicial review until such time as the United States sues to recover its cleanup costs, and the defendants have articulated no theory entitling them to pre-cleanup review. Nonetheless, Monsanto asks the court "to bifurcate and set for an early trial the two issues that are central not only to this case but also to full and fair evaluation of the remedial action proposed in EPA's recent Record of Decision." (Monsanto memo filed 6/22/84, p. 2.) OMC states that overlap of certain issues between the Second Amended Complaint and any future cost recovery suit are sufficient to "permit a trial on all the troublesome questions raised by the R.O.D." (OMC memo filed 6/22/84, p. 29.) OMC also states:

> The government now wants to dismiss the case entirely so that without public scrutiny it can implement a Record of Decision which counsel for the EPA candidly admitted at the last status hearing still has "a few kinks" in it.

(OMC memo filed 6/22/84, p. 2.)

It is not really accurate, first of all, to say that there has been no scrutiny of the proposed cleanup plan. The EPA has held public meetings and taken comments from the public. It is true that there has been no judicial review of the ROD, but that is because such review is not contemplated by the statutory scheme until the United States sues to recover its costs. If the court refused to allow dismissal of this suit, it still would not be proper to use this action to conduct a judicial review of the ROD. Allowing dismissal of this action therefore does not deprive defendants of a legitimate opportunity to obtain review of the ROD. The United States does not need permission from the court to proceed with the proposed cleanup. The court's role on this motion is to protect the defendants from legal prejudice. Any inconvenience or harm flowing from implementation of the proposed cleanup properly must be characterized as a consequence of administrative determinations and actions, and not as legal prejudice resulting from voluntary dismissal of this suit.

### 2. Collateral estoppel

If this case were not dismissed, and went to trial, judgment on the merits would not appear to preclude a future cost-recovery suit under the principle of res judicata, for the same reasons that dismissal with prejudice would not bar such a suit—a cost-recovery claim could not have been brought in this action. Neither defendant has argued to the contrary.[1] By requesting trial of certain bifurcated issues, defendants seem to suggest they could obtain rulings which effectively would bar a future cost-recovery suit not under the principle of res judicata, but under the principle of collateral estoppel. The court is not convinced at all, though, that a trial in this action—with or without bifurcation—really would allow defendants to obtain a ruling which would be of significant help to them in a future

---

**1.** Strictly speaking, of course, this res judicata question is not squarely before the court. The court addresses it only in an attempt to determine whether allowing the United States to dismiss with prejudice deprives defendants of an opportunity to obtain a judgment which would preclude a future cost-recovery suit. Addressing the question only in this context, the court

relies heavily on defendants' failure to articulate any argument in support of such a res judicata effect. Throughout this opinion the court uses the term "res judicata" to mean claim preclusion or merger and bar, and the term "collateral estoppel" to mean issue preclusion. *See* Restatement (Second) of Judgments § 18 (merger), § 19 (bar), § 27 (issue preclusion) (1982).

cost-recovery suit. Dismissal with prejudice therefore would not deprive defendants of an opportunity to obtain rulings which would have a substantial collateral estoppel effect in a future proceeding.

■ The first question proposed for bifurcation is based on the standard of "substantial and imminent harm" appearing in § 106(a) of CERCLA, 42 U.S.C. § 9606(a), under which Count IV seeks injunctive relief. It does not appear that the United States must prove "substantial and imminent harm," or the risk thereof, in a cost-recovery suit based on release of PCBs, which are a designated hazardous substance. *See* 42 U.S.C. § 9604(a)(1); 40 C.F.R. § 116.4 (1983). The court rejects Monsanto's possible suggestion to the contrary, which is based only on a supposed admission by United States Attorney Dan K. Webb. (Monsanto memo filed 3/25/83, p. 3.) A ruling that there is no "substantial and imminent harm," or risk thereof, therefore would not bar a future cost recovery action.

There also is no guarantee that the proposed bifurcated trial would result in a ruling upon the remedy proposed in the ROD. It should be noted that the ROD identifies a $75,000,000 remedy as the "cost-effective" alternative. (ROD, p. 32.) Because only limited funds are available to finance cleanup operations, the EPA is required to select the "fund-balanced" alternative, which in this case is estimated to cost $21,300,000. (ROD, pp. 32, 37.) Free from the requirement of selecting a "fund-balanced" alternative, the United States might press for an injunction requiring OMC to carry out the $75,000,000 "cost-effective" remedy, never placing the $21,300,-000 remedy before the court. Even if the $21,300,000 remedy were before the court, a decision not to enjoin OMC to carry out the $21,300,000 remedy would not be equivalent to a ruling that the United States could not recover its costs after carrying out the $21,300,000 remedy by itself. Defendants have not shown, therefore, that their bifurcation proposal could result in a

judgment which would protect them from a future cost-recovery suit.

It also should be noted that the next step in this lawsuit, if the court refused to dismiss, ordinarily would be a ruling on OMC's motion to reconsider. OMC now suggests that the court "hold" its motion to reconsider, pending trial of the bifurcated issues. (OMC memo filed 6/22/84, p. 29.) This is part of defendants' effort to jockey the present lawsuit into a posture in which it 'might serve as a vehicle for premature judicial review of the ROD. If the court did proceed first to rule on OMC's motion to reconsider, it is at least a realistic possibility that the court would grant OMC's motion. If the court granted OMC's motion to reconsider, then the remaining counts of this case would be dismissed on the basis that a mandatory cleanup injunction is not available. Obviously, dismissal on that basis would not bar a future cost-recovery action. If the court denied OMC's motion to reconsider, and set the case for full—rather than bifurcated—trial, it still would be highly doubtful that any judgment rendered would bar a future cost recovery action. In opposing dismissal, defendants do not ask for a full trial.

### 3. Public interest and public perceptions

OMC and Monsanto raise several points with respect to the public in the Waukegan area. OMC and Monsanto argue that the public interest will best be served by a prompt adjudication under the proposed bifurcation. (Monsanto memo filed 6/22/84, p. 4; OMC memo filed 6/22/84, p. 31.) It is clear that local residents and businesses suffer from continuing uncertainty as to the future of the Waukegan Harbor. They do not know whether there is a genuine threat to public health, and they fear that any cleanup operation may disrupt not only their recreational facilities, but also, for many, their livelihood. The court is sensitive to the public's desire for a prompt resolution of this controversy, but the court believes that the public interest would not be served by a refusal to dismiss

this case. The EPA has expertise in the field of environmental concerns which a court simply does not have. Further, the administrative decision-making process is better able to focus on the questions of whether a remedy should be undertaken and, if so, which remedy. The court necessarily must focus on the questions presented by the legal posture of the case before it, and it may not reach out to decide other questions, however important they are to the public interest. It is very possible that a trial in this court would not result in a satisfactory resolution of the questions with which the public is concerned; or, much worse, the court's judgment might appear generally to have given the Harbor a clean bill of health, without really having answered all the important questions. For instance, the standard of proof at trial might be one of "imminent and substantial endangerment." (Monsanto motion filed 3/25/83.) If it were determined that there is no imminent danger, the defendants would win, but the important question of long-term danger would remain unanswered.

Monsanto also makes this argument:

[I]t must be assumed that the publicity surrounding this litigation has caused the public generally to rely on this Court to insure that whatever action EPA takes is both necessary and reasonable. Granting plaintiff's Motion to Dismiss will be interpreted by the public as tantamount to a finding by the Court that there is a serious public health problem in the Waukegan area and an endorsement of the reasonableness of the Government's proposed remedy.

(Monsanto memo filed 6/22/84, p. 4.) In response to this concern, the court will state clearly that neither this ruling nor any other ruling made in this case constitutes a finding that there is a health problem or an endorsement of the EPA's proposed cleanup remedy. The court's ruling is based, instead, on an acknowledgment that the executive branch of the federal government is empowered by statute to undertake its own cleanup operations without prior approval from the judicial branch.

■ OMC and Monsanto also complain that the United States has been trying its case in the press, inciting the public to view OMC and Monsanto as environmental villains. Monsanto states that its "only opportunity to vindicate itself is through a prompt trial of the key issues." (Monsanto memo filed 6/22/84, p. 3.) This concern, while its importance should not be underestimated, is not sufficient to justify an otherwise unwarranted trial. *E.g., Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 80 F.R.D. 103, 105–06 (S.D.N.Y.1978). The court will state clearly that its ruling should not be construed as any reflection on any actions OMC or Monsanto may have taken, or on the way they have defended this lawsuit.

## C. Payment of costs, fees, and expenses

■ Motions for voluntary dismissal under Fed.R.Civ.P. 41(a)(2) commonly are granted on the condition that the plaintiff pay the defendant's costs or attorney fees. *E.g., Victory Beauty Supply, Inc. v. La Maur, Inc.*, 98 F.R.D. 306, 309 (N.D.Ill. 1983). Neither OMC nor Monsanto has asked for an award of taxable costs, as might be permitted under 28 U.S.C. § 2412(a). *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2366 at 182 (1971); *but see* 5 *Moore's Federal Practice* ¶ 41.06 at 41–87 n. 5 (2d ed. 1982). In a brief footnote at the end of its memorandum, Monsanto makes an unsupported request for "reimbursement of its fees and expenses pursuant to 28 U.S.C. § 2412." (Monsanto memo filed 6/22/84, p. 13n.) The United States replies equally briefly, stating that there is no authority for such a request. (U.S. memo filed 7/23/84, p. 11 n. 7.)

Monsanto's use of the phrase "fees and expenses" indicates clearly that it is not asking for costs under § 2412(a). Further, for several reasons, Monsanto's request is not a proper application for fees and expenses under § 2412(d). It is conceivable that the court could award Monsanto its attorney fees and expenses as a condition

of voluntary dismissal, under § 2412(b). Monsanto's brief request is wholly insufficient to justify such an award, however, so the court will not condition dismissal upon payment of Monsanto's fees and expenses. Similarly, the court will not condition dismissal upon payment of OMC's costs or fees and expenses, as OMC has not even raised the issue.

## III. COUNT IV

 As noted above, the United States filed what purported to be a notice dismissing Count IV without prejudice under Fed. R.Civ.P. 41(a)(1)(i). OMC had answered the original complaint on November 7, 1978, and on January 27, 1981 the court granted OMC's motion to allow its original answer to stand as its answer to the Amended Complaint. Count IV was added with the filing of the Second Amended Complaint on February 2, 1982. OMC moved to dismiss the Second Amended Complaint, and then moved for reconsideration of the denial of its motion, and thus it never filed an answer to Count IV. The United States therefore believes it was entitled to dismiss Count IV under Fed.R.Civ.P. 41(a)(1), which reads, in pertinent part:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.

OMC argues that this procedure may be used only to dismiss entire actions, not to dismiss only one of several claims against a defendant. There is little case law addressing this question, and it is not precisely on point. See Exxon Corp. v. Maryland Casualty Co., 599 F.2d 659, 662 (5th Cir.1979); Smith, Kline & French Laboratories v. A.H. Robins Co., 61 F.R.D. 24, 29 (E.D.Pa. 1973). These cases generally support OMC's argument, and the court agrees. Fed.R.Civ.P. 41(a)(1) governs dismissal of entire actions, not of single claims. Of course, the court has no occasion to discuss the situation in which a plaintiff wishes to dismiss all claims against only one of several defendants.

The court believes, further, that it is not of much importance in this case whether the purported dismissal of Count IV was or was not effective. Even if the notice did operate to dismiss Count IV without prejudice, refiling of Count IV almost certainly would be barred by the court's present dismissal of Counts I and II with prejudice, since all three counts seek identical relief on essentially the same set of facts. Any other rule would allow circumvention of the prohibition of claim-splitting. When claims which properly may not be split are joined together, if the plaintiff could dismiss one claim without prejudice as of right, and then refile that claim after a decision on the merits of the other claim, then the plaintiff effectively could split its claims.

## IV. ILLINOIS

Illinois moved to intervene in this action, but its motion was denied by order dated May 29, 1979. Illinois appealed, and the Court of Appeals held that Illinois could intervene as of statutory right. State of Illinois v. Outboard Marine Corporation, 680 F.2d 473, 480–81 (7th Cir.1982); see also State of Illinois v. Outboard Marine Corporation, 619 F.2d 623, 630–32 (7th Cir.1980), vacated and remanded, 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981). Illinois also had filed its own action, which the court dismissed without prejudice because it duplicated Illinois' claims in this action. State of Illinois v. Outboard Marine Corporation, No. 78 C 3187 (N.D.Ill. Sept. 30, 1982). OMC has moved to dismiss four state-law claims which Illinois asserts in its complaint-in-intervention, but the court has not ruled on OMC's motion.

On March 18, 1983 Illinois moved for a stay of proceedings pending a government cleanup under CERCLA, anticipating the United States' similar motion by three days. More recently, Illinois was granted leave to join in the United States' present motion for voluntary dismissal under Fed. R.Civ.P. 41(a)(2). In addition to joining in the United States' motion, Illinois has

adopted the United States' reply brief in support of its motion, stating also that "the State of Illinois is committed to the remedy contained in the Record of Decision for the cleanup of Waukegan Harbor." (Illinois memo filed 7/23/84, p. 2.)

On the present motion, the parties have not given any separate consideration to Illinois' pending complaint-in-intervention. The court assumes that Illinois' joining in the United States' motion amounts to a request for voluntary dismissal of Illinois' own claims, and the court also assumes that the foregoing discussion applies equally to Illinois. Illinois' claims therefore are dismissed with prejudice.

## V. CONCLUSION

A status hearing is set for September 14, 1984. At that time the United States and Illinois shall inform the court whether they accept the conditions of dismissal, or whether they wish to withdraw the motion for voluntary dismissal and proceed with this litigation. Also at that time the parties shall report to the court on the status of the remaining third-party claim and cross-claim, and on the status of *Outboard Marine Corporation v. Castle,* No. 78 C 751.

Accordingly, the court grants the United States' motion, joined in by Illinois, for voluntary dismissal under Fed.R.Civ.P. 41(a)(2). Dismissal of the United States' claims and of Illinois' claims is granted on the condition that dismissal shall be with prejudice; however, dismissal shall be without prejudice to a future cost-recovery suit after a government cleanup. A status hearing is set for September 14, 1984.

It is so ordered.