**Diana RATKOVICH, By and Through her legal guardian, John RATKOVICH, Plaintiff–Appellant,**

v.

**SMITH KLINE, French Laboratories, A Division of Smithkline Beckman Corporation and McNeil Pharmaceutical, a Division of McNeilab, Incorporated, Defendants–Appellees.**

**Nos. 90–1015, 90–1443.**

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1991.

Decided Dec. 27, 1991.

---

James T. Ball, Goldberg & Goldberg, Chicago, Ill. (argued), for plaintiff-appellant.

Francis D. Morrissey, Michael A. Pollard (argued), Thomas R. Nelson, Richard B. Foster, III, Baker & McKenzie, Michael K. Lulich, Andrea J. Barron, Stephen C. Debboli, Modesto, Reynolds & McDermott, Barbara M. DeCoster (argued), Michael W. Davis, Peter M. Felitti, Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before COFFEY, EASTERBROOK and MANION, Circuit Judges.

COFFEY, Circuit Judge.

John Ratkovich, guardian of Diana Ratkovich, appeals the dismissal of his suit with prejudice against Smith Kline and French Laboratories and McNeilab, Inc. Ratkovich alleged that the defendant laboratories manufactured the drugs that caused Diana to suffer severe brain damage. We affirm.

## I.

John Ratkovich filed a thirty-two count complaint in the Circuit Court of Cook County, Illinois, on March 25, 1988, alleging that his daughter, Diana Ratkovich, sustained severe brain damage as the result of her mother's prescribed use of the drug Dexadrine, a drug manufactured by Smith Kline and French Laboratories ("Smith Kline") during pregnancy. The complaint also alleged that Diana sustained additional injuries as the result of her prescribed use of Haldol, a drug manufactured by McNeil Pharmaceutical, Inc. ("McNeil") while she was confined in two hospitals. Diana's three siblings also joined in the suit alleging loss of consortium.[1] The plaintiff's causes of action asserted claims under the theories of negligence, strict liability, and breach of warranty.

The plaintiff concedes that since filing this case in March of 1988, he has been unable to obtain documentation that Mrs. Ratkovich was either prescribed or ingested Dexadrine, or that Diana was prescribed or used Haldol. In contrast, the defendants exerted considerable time and expense in preparing their respective cases, including unnecessary efforts and expenses incurred as a result of the plaintiff's lack of cooperation in the trial of this lawsuit. Following the district court's grant of Smith Kline's motion for removal of the

1. The court, on the defendants' motion, dismissed Counts 24 through 30, which related to loss of sibling consortium, a cause of action not recognized in Illinois under the circumstances of this case.

action to federal court, both defendants served requests for discovery interrogatories on the plaintiff. After the plaintiff repeatedly failed to comply with the defendants' request for verified answers to their interrogatories, McNeil was forced to file a motion to compel verified answers. After obtaining discovery responses, the defendants began their search for the extensive medical records of Diana Ratkovich, covering a period of twenty-nine years and including treatment from more than sixty different physicians, hospitals, and clinics in a number of states. The defendants also collected records of Diana's attendance at special schools. However, due to the significant passage of time, many of the records were unavailable. Because of the lack of cooperation on the part of Mr. and Mrs. Ratkovich, the defendants were also required to file motions to compel in order to obtain their depositions.

After the district court entered an order setting a cutoff date for discovery, the defendants filed a motion requesting the plaintiff to identify his expert witnesses, which the plaintiff objected to on the grounds that substantial discovery was needed before his experts could confirm their opinions and that disclosure would thus be premature. The district court disagreed and ordered the plaintiff to disclose the identity of the experts by November 30, 1989. Sometime in mid-November 1989, the plaintiff's counsel contacted the defendants and informed them of the plaintiff's intention to voluntarily dismiss the case because he was unable to comply with the deadline to disclose his experts. The parties were not able to agree to the terms of dismissal, and on November 30, 1989, the plaintiff brought a motion to voluntarily dismiss the case without prejudice. The district court allowed the motion to dismiss but granted it with prejudice after 30 days. The parties, at the plaintiff's request, were allowed the opportunity to brief the question of whether the suit should be dismissed with prejudice.

On February 2, 1990, the district court entered a final judgment dismissing the plaintiff's case with prejudice. The judge reasoned that the plaintiff "clearly demonstrated a lack of diligence in pursuing this case and perhaps even bad faith," in obtaining evidence to support the allegations of the complaint and in failing to comply with discovery requests. The court also noted that the plaintiff had been unable to gather a sufficient quantum of evidence for his experts to formulate an opinion on the case after nearly two years of discovery, and that the defendants had expended considerable effort and expense in defending the case. Furthermore, the court granted McNeil's Rule 11 request for costs and attorney fees in the amount of $3,545 incurred in defending the plaintiff's Rule 11 motion.[2] The plaintiff appeals the district court's dismissal of his complaint with prejudice.

## II.

The plaintiff argues that the trial court erred in substituting her motion for voluntary dismissal to a dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2). Rule 41(a)(2) provides in pertinent part:

> "(2) **By order of Court.** Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court *and upon such terms and conditions as the court deems proper....*"

(emphasis added). The dismissal of a plaintiff's complaint under Rule 41(a)(2) is always within the discretion of the trial court, and reversal will be granted only if plaintiff can demonstrate an abuse of that discretion. *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986). "Accordingly, reversal [of a district court's dismissal with prejudice] will be granted only if [the plaintiff] can demonstrate that the discretion of the

---

**2.** The plaintiff does not appeal the award of costs and attorney fees in the amount of $3,545 to McNeil.

trial judge was abused." *Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir.1980). We have previously noted that a district court may impose such terms and conditions as it believes necessary to protect the other parties from prejudice and that "terms and conditions are the *'quid pro quo* of allowing the plaintiff to dismiss his suit...." *Brandt v. Schal Associates, Inc.*, 854 F.2d 948, 955 (7th Cir.1988) (quoting *McCallBey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir.1985)).

This court has delineated several factors that a district court may wish to consider in making its determination as to whether a defendant has suffered legal prejudice. These factors include "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal and the fact that a motion for summary judgment has been filed by the defendant." *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969).

■ The plaintiff argues that neither defendant suffered sufficient legal prejudice to justify the district court's dismissal of his case with prejudice. However, under the factors enumerated in *Pace*, both Smith Kline and McNeil would certainly have suffered prejudice if the plaintiff had been granted a voluntary dismissal without prejudice after the merry-go-round the defendants experienced at the hands of the plaintiff through his failure to timely respond to interrogatories and through his general lack of cooperation. Initially, we note that both defendants were forced to expend an inordinate amount of time and effort while incurring significant expenses in preparing their respective cases, while the plaintiff failed to uncover any evidence tending to corroborate the allegations, namely those dealing with proof that the defendant laboratories manufactured drugs that caused Diana to suffer severe brain damage. Nor was the plaintiff able to establish that Mrs. Ratkovich ingested Dexadrine in accordance with a doctor's prescription or that Diana was given Haldol while hospitalized.

Both defendants were required to file motions to compel compliance with their discovery requests, and the depositions of Mr. and Mrs. Ratkovich proceeded only after the court intervened and ordered them to appear. In addition to the depositions of Mr. and Mrs. Ratkovich, McNeil conducted depositions in several different cities of the examining medical professionals regarding the treatment of Diana. Moreover, McNeil was forced to engage in extensive investigation of Diana's and Mrs. Ratkovich's medical histories.

Moreover, as the district court noted, the "plaintiff clearly demonstrated a lack of diligence in pursuing this case and perhaps even bad faith." Despite the plaintiff's allegation that Diana's disability stemmed from her mother's ingestion of Dexadrine nearly thirty years ago and that Diana's own use of Haldol fifteen years ago aggravated the disability, the plaintiff was unable to document any evidence of the alleged ingestion of the drugs or the causal link to establish the required nexus between ingestion and the disability. Even after nearly two years of discovery, the plaintiff was still unable to produce a scintilla of evidence establishing a causal link between the alleged ingestion of the drugs and the disabilities. The record clearly demonstrates that the plaintiff failed to properly prosecute his claim, and attempted to frustrate the defendants' effort in the preparation of their defense.

The district court also found the plaintiff's explanation for his motion to dismiss his case without prejudice to be meritless and we agree. The plaintiff argued before the district court that dismissal without prejudice was warranted in this case because he had been unable to comply with the court-ordered deadline to disclose experts (almost 2 years after the complaint was filed) as a result of his failure to adduce enough evidence for his putative experts to form an opinion. The district court determined that such a reason for dismissal did "not warrant permitting this action to be refiled." As the district court noted, "the evidentiary trail in this case has long been cold," and to permit the plaintiff to take a voluntary dismissal without preju-

dice (thus permitting the passage of even more time), creates the risk of even greater prejudice to the defendants should the claim be refiled. The actions on the part of the plaintiff litigant gives great credence and impetus to the ever-growing movement in this country to have our courts adopt the English rule—the loser pays the cost.

The record reveals a case in which the plaintiff failed to take even the most basic steps to prosecute his claims. The plaintiff went beyond this and attempted to frustrate the diligent efforts taken by the defendants to defend the suit. Finally, the plaintiff's reason for seeking a dismissal without prejudice (that he had been unable to adduce enough evidence for his putative experts to form an opinion) was meritless in light of his failure to pursue his own discovery during the two years of this litigation. The district court did not abuse its discretion in dismissing the plaintiff's suit with prejudice.

### III.

The decision of the district court is AFFIRMED.