23 F.3d 926
 John Michael KING, Sr., Beverly E. King, and Next Friend of
John Michael King, Jr., and Angela Lynn King,
Minors, Plaintiffs-Appellants,
v.
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Tennessee
Corporation, Defendant-Appellee.
 No. 93-7425.
 United States Court of Appeals,
Fifth Circuit.
 June 23, 1994.
 
 1
 S. Dennis Joiner, Joiner & Polk, Don H. Goode, Dossett, Goode, Barnes & Broom, Jackson, MS, for plaintiffs-appellants.
 
 
 2
 Kenna L. Mansfield, Jr., Roy H. Liddell, Wells, Wells, Marble & Hurst, Jackson, MS, for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of Mississippi.
 
 
 4
 Before SMITH and BARKSDALE, Circuit Judges, WALTER,[1] District Judge.
 
 
 5
 WALTER, District Judge.
 
 
 6
 Plaintiffs/Appellants John Michael King and family appeal the ruling by Judge Wingate in the Southern District of Mississippi granting summary judgment to the Defendant/Appellee Provident Life on the basis of res judicata. For the following reasons, the lower court's ruling is REVERSED and REMANDED.FACTS AND PROCEDURAL HISTORY
 
 
 7
 Plaintiff/Appellant John Michael King ("King")[2] was provided medical, disability, and hospitalization insurance through a group policy issued to his employer by Defendant Provident Life & Accident Insurance Company ("Provident"). That policy, Group Protection for Employees of ALCO Properties, Inc., Insurance Plan ("Group Plan"), covered King's dependents as well.
 
 
 8
 King became afflicted with amyotrophic lateral sclerosis, or Lou Gehrig's disease, which resulted in physical deterioration and, on August 6, 1987, termination of his employment. At the time of his termination, King received a "Notice to Persons Whose Group Health Benefits are Terminating." King was given the opportunity to extend his insurance coverage for at least eighteen months. In December, 1987, King began personal payment of the premiums due under the Group Plan.
 
 
 9
 After almost a full year of continuously declining health, King was hospitalized in the intensive care unit. The terminal nature of his condition prompted King's family to inquire about removing King from the hospital for home treatment. King's physician acquiesced, believing that King had approximately six months to live. Under the Group Plan "Alternative Treatment Benefit" provisions, home health care qualified as a covered expense. Provident agreed to pay for King's home health care and reaped a savings of approximately $30,000 per month as a result. King contends that Provident agreed to provide this private care for "as long as necessary." In January, 1989, King learned that Provident intended to terminate coverage under the Group Plan in May, 1989. In March of that year, the Kings retained the services of an attorney, Jacquelin Pierce, to represent their interests in the looming dispute with Provident. Pierce contacted Provident regarding conversion coverage from the Group Plan to an individual policy. The Group Plan provided in pertinent part:
 
 
 10
 If you have been covered under the Plan for a period of 3 months and your medical coverage under the plan ceases because:
 
 
 11
 (a) your employment ceases:
 
 
 12
 * * * * * *
 
 
 13
 you may apply for a conversion plan providing hospital and surgical benefits.
 
 
 14
 * * * * * *
 
 
 15
 The amount of coverage provided will be subject to and determined by the laws of the state where the plan is issued. The coverage provided will not be identical to the coverage provided under this Plan. You have to apply within 31 days after coverage ends. The conversion plan will be subject to the rules and premiums that apply to such plans at that time. A description of conversion plan benefits, rates for coverage and application form will be given to you at the time your coverage under this Plan ends. If issued, the conversion plan will go into effect on the day following the date coverage under the Plan ended.
 
 
 16
 Under the conversion policy offered by Provident, alternative treatment benefits and home health care services were not covered. King did not apply for the conversion policy, arguing that it failed to provide adequate benefits.
 
 
 17
 King's coverage was extended an additional twelve months due to the fact that he would have been hospitalized but for the private treatment. Provident informed the Kings on March 22, 1990 that the Group Plan coverage would terminate on May 31, 1990.
 
 
 18
 Plaintiffs/Appellants filed suit on May 9, 1990 in Mississippi state court, asking for injunctive relief, damages, and costs. Plaintiffs argued that Defendants' conduct resulted in oral and written modifications to the Group Plan and independent collateral agreements as well. Defendants removed the suit to the United States District Court for the Southern District of Mississippi. After denial of Plaintiffs' Motion for Preliminary Injunction and additional discovery, Defendants moved for summary judgment.
 
 
 19
 On that motion, the district court considered whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 et seq., governed Plaintiffs' action, thereby preempting the state law claims; whether an oral or written modification to the Group Plan was cognizable under the facts of the case; whether representations were made, independent of the Group Plan, so that collateral agreements to provide unlimited coverage to Plaintiffs were created; and whether various legal claims not asserted in the Complaint should have been considered by the court in the interests of justice. As to the issues raised by Plaintiffs, the court granted summary judgment. Additionally, the court found that one of the issues not asserted in Plaintiffs' Complaint was worthy of summary judgment as well. However, the court could not resolve the issue of whether Plaintiffs were given an adequate opportunity to convert their insurance coverage to an individual policy as required under the Group Plan. The evidence before the court precluded judgment as a matter of law. The district court disposed of the matter finding that it could not, in the interests of justice permit amendment of the pleadings at such a late date. Judge Barbour stated: "[p]laintiffs, of course, retain the right to file another lawsuit with regard to this [inadequate conversion policy] claim."
 
 
 20
 On February 28, 1992, Plaintiffs filed suit in the Southern District of Mississippi, Jackson Division identical in all respects to the first suit mentioned above with two exceptions. First, Plaintiffs conceded ERISA's governance of the action. Second, Plaintiffs included the inadequate conversion opportunity claim in the Complaint. Defendant/Appellee Provident moved for summary judgment on res judicata grounds. Plaintiffs filed a cross motion for summary judgment on the grounds asserted in its complaint. Noting that all claims in the plaintiff's complaint were resolved in favor of Defendants and that the inadequate conversion coverage issue "could and should have been adjudicated" in the first suit, Judge Wingate found that all four elements required for the application of res judicata were present. In its order granting Provident's motion on June 24, 1992, the court did not mention Judge Barbour's comments apparently reserving the inadequate conversion claim. Plaintiffs' cross motion was denied without discussion. This appeal followed.
 
 DISCUSSION
 
 21
 King argues that the doctrine of res judicata is inapplicable when the rendering court explicitly reserves an issue or claim for subsequent proceedings. Additionally, King requests this panel to review the denial of his cross-motion for summary judgment on the inadequate conversion coverage issue. On appeal, the standard of review for the entry of summary judgment is de novo Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 79 (5th Cir.1987).
 
 
 22
 What is the effect of Judge Barbour's express reservation of Plaintiff's claim?
 
 
 23
 King argues that Judge Barbour's language concerning the inadequate conversion coverage claim had the effect of a dismissal without prejudice expressly forestalling claim preclusion; that Provident's failure to appeal Judge Barbour's ruling estops Provident from arguing for claim preclusion. Provident argues that Judge Barbour's comments concerning Plaintiffs' ability to bring a second action are mere dicta, incorrectly predicting the effect of his refusal to permit amendment of the complaint.
 
 
 24
 Professors Wright, Miller and Cooper specifically address the rendering court's ability to control the preclusive consequences of its rulings. "Despite the general rule that a court cannot dictate preclusion consequences at the time of deciding a first action, it should have power to narrow the ordinary rules of claim preclusion. A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." 18 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURES Sec. 4413 (1981).
 
 
 25
 The Second Restatement helpfully illuminates this issue. In fact, the drafters specifically addressed the issue at hand in Sec. 26(1)(b), which provides:
 
 
 26
 (1) When any of the following circumstances exists, the general rule of Sec. 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
 
 
 27
 * * * * * *
 
 
 28
 (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action ...
 
 
 29
 RESTATEMENT (SECOND) OF JUDGMENTS Sec. 26 (1982). The comments to this subsection state that a determination "without prejudice" or words to that effect should permit a second action unless reversed or set aside. However, the commentators point out that refusal by the court to allow an amendment of the complaint is not a reservation within the meaning of subsection (b).
 
 
 30
 Several Circuits have confronted the legitimacy of a rendering court's power to limit subsequent claim preclusion. The Sixth Circuit case of Guzowski v. Hartman, 849 F.2d 252 (6th Cir.1988), presented a fact pattern similar to the case before this panel. In 1981, the plaintiffs filed a suit alleging violations of the Sherman Act, Sec. 1983, and several pendent state law claims. The district court dismissed the federal claims, but allowed the plaintiffs to amend their suit to include a separate antitrust claim. When the plaintiffs filed a complaint virtually identical to the original except for two new headings only, the district court dismissed the suit for failure to state a claim upon which relief could be granted. Affirming the dismissal, a Sixth Circuit panel stated, "[w]e note, however, that dismissal for failure to state a claim is without prejudice, and the Guzowskis are free to file a new complaint." Id. at 254 (citing No. 82-1819, slip op. at 8-9 (6th Cir. Nov. 28, 1983 [723 F.2d 909 (TABLE) ] (per curiam)). When the Guzowskis filed their new suit in 1984 they included Sherman Act, Clayton Act, Sec. 1983, and RICO claims. The defendants moved for summary judgment on grounds of res judicata. The motion was referred to a magistrate. In his report and recommendation, the magistrate stated that the Sixth Circuit's earlier holding that the dismissal was without prejudice was simply a "note" unnecessary to the actual decision and therefore without weight. Guzowski, 849 F.2d at 254. The district court did not reverse the magistrate, interpreting the statement to be dictum and ineffective. Id. at 255. On appeal, the Sixth Circuit held that, while the rendering court had not reserved the plaintiffs' right to file a second suit, the per curiam opinion clearly modified that judgment. The appellate court held that Sec. 26(1)(b) of the Second Restatement, among other authorities, permitted the second lawsuit in light of the earlier panel's reservation/modification.
 
 
 31
 The Seventh Circuit also cited Sec. 26(1)(b) as support for a second action by the government in United States v. Outboard Marine Corp., 789 F.2d 497 (7th Cir.1986). There, the United States requested dismissal without prejudice of a suit for injunctive relief brought under the Refuse and Clean Water Acts. The government hoped to bring a CERCLA cost recovery suit later once the EPA had completed its cleanup. The district court dismissed the action with prejudice and reserved the government's right to pursue a cost-recovery action. The district court then modified the decision to dismiss the government's complaint without prejudice on the condition that the government execute a covenant not to sue except for the possible cost-recovery action. Upholding the district court's decision, the Seventh Circuit stated, "[t]he mere fact that the district court allowed the government to later pursue this second action seeking recovery costs is not in and of itself prejudicial to the defendants." Id. at 508.
 
 
 32
 These cases, the Restatement comments and the treatise cited above support King's argument for reversal. Since Judge Barbour may have predicated his refusal to amend the complaint upon the availability of a second suit on the inadequate conversion coverage issue, the statement cannot be viewed merely as dictum. Further, Provident's failure to seek reconsideration or appeal strengthens the finality of the reservation, rather than the judgment alone.
 
 
 33
 Are Plaintiffs entitled to coverage benefits equal to those available under their group plan?
 
 
 34
 King's final argument on appeal is that the district court erred when it denied Plaintiffs' cross claim for summary judgment. As mentioned above, Judge Wingate focused his discussion entirely upon the res judicata issue and did not enumerate any reasons for denying the cross motion. Therefore, this matter is remanded for further consideration by Judge Wingate.
 
 CONCLUSION
 
 35
 Absent the reservation, the Kings' second action would be barred under the principles of res judicata. The reservation, however, served to limit the preclusive effect of the rendering court's decision, thereby permitting a subsequent lawsuit. The district court's decision is therefore REVERSED and the case is REMANDED for further proceedings.
 
 
 
 [1]
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [2]
 Since this suit involves the entire King family, the names and terms "King," "King's" and the term Plaintiffs or Plaintiffs/Appellants are used interchangeably